1  **BRODSKY SMITH**
2  Evan J. Smith, Esquire (SBN 242352)
   esmith@brodskysmith.com
3  Ryan P. Cardona, Esquire (SBN 302113)
   rcardona@brodskysmith.com
4  9595 Wilshire Boulevard, Suite 900
   Beverly Hills, CA 90212
5  Phone: (877) 534-2590
   Facsimile: (310) 247-0160
6
7  *Attorneys for Plaintiff*

8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10 SAPNA MISTRY,                          | Case No.:
11                 Plaintiff,              | **Complaint For:**
12         vs.                             |
13 HARPOON THERAPEUTICS, INC.,             | (1) Violation of § 14(a) of the Securities Exchange Act of 1934
14 JOSEPH S. BAILES, MARK CHIN,            | (2) Violation of § 20(a) of the Securities Exchange Act of 1934
   JONATHAN DRACHMAN, JULIE
15 EASTLAND, RON HUNT, SCOTT               | **JURY TRIAL DEMANDED**
   MYERS, ANDREW ROBBINS, and
16 LAUREN SILVERNAIL,
17                 Defendants.
18
19
20
21         Plaintiff, Sapna Mistry ("Plaintiff"), by and through her attorneys, alleges upon
22 information and belief, except for those allegations that pertain to her, which are alleged upon
23 personal knowledge, as follows:
24                         **SUMMARY OF THE ACTION**
25         1.      Plaintiff brings this stockholder action against Harpoon Therapeutics, Inc.
26 ("Harpoon" or the "Company") and the Company's Board of Directors (the "Board" or the
27 "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of
28

- 1 -
COMPLAINT

1. Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Merck ("Parent") through merger vehicle Hawaii Merger Sub, Inc. ("Merger Sub," and together with Parent, "Merck") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a January 8, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Merck will acquire all of the remaining outstanding shares of Harpoon's common stock at a price of $23.00 per share in cash (the "Merger Consideration"). The Company will survive the Merger as a wholly owned subsidiary of Parent.

3. Thereafter, on January 29, 2024, the Company filed its Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote her Harpoon shares in favor of the Proposed Transaction.

6. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Harpoon, provided by the Company to the Company's financial advisors Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview, and provided to the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of California, and at all times relevant hereto, has been a Harpoon stockholder.

9. Defendant Harpoon, is a clinical-stage immunotherapy company, engaged in the development of a novel class of T cell engagers that harness the power of the body's immune system to treat patients suffering from cancer and other diseases in the United States. The Company is incorporated in Delaware and has its principal place of business at 131 Oyster Point Boulevard, Suite 300, South San Francisco, CA 94080. Shares of Harpoon common stock are traded on the NASDAQ Stock Market under the symbol "HARP."

10. Defendant Joseph S. Bailes ("Bailes") has been a Director of the Company at all relevant times. In addition, Defendant Spence serves as the Chairman of the Board.

11. Defendant Mark Chin ("Chin") has been a director of the Company at all relevant times.

12. Defendant Jonathan Drachman ("Drachman") has been a director of the Company at all relevant times.

13. Defendant Julie Eastland ("Eastland") has been a director of the Company at all relevant times. In addition, Defendant Eastland serves as the Chief Executive Officer ("CEO") of the Company.

14. Defendant Ron Hunt ("Hunt") has been a director of the Company at all relevant times.

15. Defendant Scott Myers ("Myers") has been a director of the Company at all relevant times. In addition, Defendant Myers serves as the Chairman of the Board.

16. Defendant Andrew Robbins ("Robbins") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Parent is a research-intensive biopharmaceutical company.

19. Non-Party Merger Sub is a wholly owned subsidiary of Parent.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Harpoon, a clinical-stage immunotherapy company, engages in the development of a novel class of T cell engagers that harness the power of the body's immune system to treat patients suffering from cancer and other diseases in the United States.

24. In a press release on November 9, 2023, for the Third Quarter 2023 Financial Results, the Company highlighted its performance results and financial success. For example, the Company reported research and development (R&D) expense for the third quarter ended September 30, 2023 was $12.3 million, compared to $21.0 million for the third quarter ended September 30, 2022; and net loss attributable to common stockholders for the third quarter ended September 30, 2023 was $1.8 million compared to a net loss attributable to common stockholders of $11.6 million for the third quarter ended September 30, 2022.

25. Speaking on the results, Defendant CEO Eastland stated, "Over the last several months, we have made important progress and positioned Harpoon for continued momentum ahead. During ESMO last month, we presented the largest data set so far for HPN328 and are excited by the clinical benefit observed, particularly the response data in our 1 mg priming dose cohorts, from which we plan to select the recommended Phase 2 dose(s) by the of this year. The HPN328 interim update shows compelling activity with the potential for best-in-class efficacy as we select the optimized dose to study across multiple tumor types, including small cell lung cancer, neuroendocrine prostate cancer, and other neuroendocrine neoplasms."

26. Eastland continued, noting the Company's likelihood for future success: "We look forward to meeting with the regulators in the first half of 2024 to discuss our development plans. Additionally, our newly strengthened balance sheet allows us to continue executing toward multiple value-creating events."

27. The financial results are not an anomaly, but rather, are indicative of a trend of continued success by Harpoon. Based upon these positive results and outlook, the Company is likely to have future success.

28. Despite this upward trajectory, the Individual Defendants have caused Harpoon to enter into the Proposed Transaction without providing requisite information to Harpoon stockholders such as Plaintiff.

*The Flawed Sales Process*

29. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Merck.

30. The Preliminary Proxy Statement fails to disclose what powers the Transactions Committee (the "Committee") had to evaluate the Proposed Transaction, including whether the Committee was empowered to veto a potential transaction not in the best interest of stockholders.

31. Moreover, the Preliminary Proxy Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

32. Furthermore, the Registration Statement fails to adequately disclose the consideration paid to, or owed to, Centerview for services rendered in relation to the sales process and Proposed Transaction; and how much, if any, is owed to Centerview upon consummation of the Proposed Transaction.

33. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

34. On January 8, 2024, Harpoon and Merck issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Rahway, N.J. & South San Francisco, Calif.**--(BUSINESS WIRE)--January 8, 2024-- Merck (NYSE: MRK), known as MSD outside of the United States and Canada, and Harpoon Therapeutics, Inc. (Nasdaq: HARP) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire Harpoon for $23.00 per share in cash for an approximate total equity value of $680 million.

This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20240108498651/en/

"At Merck, we continue to enhance our oncology pipeline through strategic acquisitions that complement our current portfolio and advance breakthrough science to help address the needs of people with cancer worldwide," said Dr. Dean Y. Li, president, Merck Research Laboratories. "This agreement reflects the creativity and commitment of scientists and clinical development teams at Harpoon. We look forward to further evaluating HPN328 in innovative combinations with other pipeline candidates."

Harpoon has developed a portfolio of novel T-cell engagers that employ the company's proprietary Tri-specific T cell Activating Construct (TriTAC®) platform, an engineered protein technology designed to direct a patient's own immune cells to kill tumor cells, and ProTriTAC™ platform, applying a prodrug concept to its TriTAC® platform to create a therapeutic T-cell engager that is designed to remain inactive until it reaches the tumor.

"At Harpoon, we have always been committed to advancing our cancer immunotherapy candidates to improve the lives of patients. With Merck's recognized leadership in oncology clinical development and global commercial footprint, our lead candidate, HPN328, is well positioned moving forward," said Julie Eastland, president and chief executive officer, Harpoon Therapeutics. "The talented, passionate and dedicated Harpoon team has made great progress over the past eight years in leveraging our research platform to develop an innovative suite of candidates, and we are pleased that Merck has recognized the significant potential of our pipeline. I want to personally thank all of our key stakeholders, including our entire team at Harpoon, trial participants, physicians and our shareholders, who have supported us."

Harpoon's lead candidate, HPN328, is a T-cell engager targeting delta-like ligand 3 (DLL3), an inhibitory canonical Notch ligand that is expressed at high levels in small cell lung cancer (SCLC) and neuroendocrine tumors. HPN328 is currently being evaluated in a Phase 1/2 clinical trial ([NCT04471727](NCT04471727)) evaluating the safety, tolerability and pharmacokinetics of HPN328 monotherapy in patients with advanced cancers associated with expression of DLL3. The study is also evaluating HPN328 in combination with atezolizumab in patients with SCLC. In October 2023, Harpoon announced the presentation of positive interim tolerability and response data for HPN328 in certain patients with SCLC and neuroendocrine tumors.

Additional pipeline candidates include HPN217 targeting B-cell maturation antigen (BCMA), currently in Phase 1 clinical development for the treatment of patients with relapsed/refractory multiple myeloma, and several preclinical stage candidates, including HPN601, a conditionally activated targeting epithelial cell

adhesion molecule (EpCAM) for the treatment of certain patients with EpCAM expressing tumors.

Under the terms of the agreement, Merck, through a subsidiary, will acquire all outstanding shares of Harpoon Therapeutics, Inc. for a price per share of $23.00 in cash. The Board of Directors of Harpoon has unanimously approved the transaction. Closing of the acquisition is subject to certain conditions, including approval of the merger by Harpoon's stockholders, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. The transaction is expected to close in the first half of 2024 and will be accounted for as an asset acquisition. Merck expects to record a charge (non-tax deductible) of approximately $650 million, or approximately $0.26 per share, that will be included in non-GAAP results in the quarter that the transaction closes.

**Advisors**

Evercore Group L.L.C. acted as financial advisor to Merck in this transaction and Covington & Burling LLP acted as its legal advisor. Centerview Partners LLC acted as financial advisor to Harpoon and Goodwin Procter LLP acted as its legal advisor.

**About HPN328**

HPN328 targets delta-like ligand 3 (DLL3), an inhibitory canonical Notch ligand. HPN328 uses Harpoon's proprietary Tri-specific T cell Activating Construct (TriTAC®) platform that is designed to recruit a patient's own immune cells to kill tumor cells. HPN328 is being evaluated as monotherapy and in combination in an ongoing open-label, multicenter two-part study (NCT04471727) to assess the safety, tolerability, and pharmacokinetics in patients with certain advanced cancers associated with expression of DLL3.

In March 2022, the U.S. Food and Drug Administration (FDA) granted Orphan Drug Designation to HPN328 for the treatment of small cell lung cancer.

**About TriTACs**

TriTACs are novel investigational T-cell-engaging therapeutic proteins optimized for the treatment of solid tumors. TriTACs have an extended serum half-life and may be manufactured using routine biologic techniques.

**Merck's focus on cancer**

Our goal is to translate breakthrough science into innovative oncology medicines to help people with cancer worldwide. At Merck, the potential to bring new hope to people with cancer drives our purpose and supporting accessibility to our cancer

medicines is our commitment. As part of our focus on cancer, Merck is committed to exploring the potential of immuno-oncology with one of the largest development programs in the industry across more than 30 tumor types. We also continue to strengthen our portfolio through strategic acquisitions and are prioritizing the development of several promising oncology candidates with the potential to improve the treatment of advanced cancers. For more information about our oncology clinical trials, visit www.merck.com/clinicaltrials.

**About Harpoon Therapeutics**

Harpoon Therapeutics is a clinical-stage immunotherapy company developing a novel class of T-cell engagers designed to harness the power of the body's immune system to treat patients suffering from cancer and other diseases. T-cell engagers are engineered proteins that direct a patient's own T-cells to kill target cells that express specific proteins, or antigens, carried by the target cells. Using its proprietary Tri-specific T cell Activating Construct (TriTAC®) platform, Harpoon is developing a pipeline of novel TriTACs initially focused on the treatment of certain types of solid tumors and hematologic malignancies. Harpoon has also developed a proprietary ProTriTAC™ platform, which applies a prodrug concept to its TriTAC platform to create a therapeutic T-cell engager that is designed to remain inactive until it reaches the tumor. Harpoon's third proprietary technology platform, extended release TriTAC-XR, is designed to mitigate cytokine release syndrome. For additional information about Harpoon Therapeutics, please visit www.harpoontx.com.

**About Merck**

At Merck, known as MSD outside of the United States and Canada, we are unified around our purpose: We use the power of leading-edge science to save and improve lives around the world. For more than 130 years, we have brought hope to humanity through the development of important medicines and vaccines. We aspire to be the premier research-intensive biopharmaceutical company in the world - and today, we are at the forefront of research to deliver innovative health solutions that advance the prevention and treatment of diseases in people and animals. We foster a diverse and inclusive global workforce and operate responsibly every day to enable a safe, sustainable and healthy future for all people and communities. For more information, visit www.merck.com and connect with us on X (formerly Twitter), Facebook, Instagram, YouTube and LinkedIn.

*Potential Conflicts of Interest*

34.     The breakdown of the benefits of the deal indicates that Harpoon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Harpoon.

35. For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares Owned (#) | Value of Shares Owned ($) |
|---|---|---|
| Julie Eastland | 3,503 | 80,569 |
| Luke Walker, M.D. | — | — |
| James B. Bucher, J.D. | — | — |
| *Non-Employee Directors* | | |
| Joseph S. Bailes, M.D. | — | — |
| Mark Chin | 7,800 | 179,400 |
| Jonathan Drachman, M.D. | — | — |
| Ronald Hunt | 7,800 | 179,400 |
| Scott Myers | 17,665 | 406,295 |
| Andrew Robbins | — | — |
| Lauren P. Silvernail | — | — |

36. In addition, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Unvested Stock Options (#) | Value of Unvested Stock Options ($) | Vested Stock Options (#) | Value of Vested Stock Options ($) |
|---|---|---|---|---|
| Julie Eastland | 47,757 | 436,959 | 34,404 | 142,871 |
| Luke Walker, M.D. | 28,467 | 361,547 | 12,033 | 151,553 |
| James B. Bucher, J.D. | 110,000 | 1,287,000 | — | — |
| *Non-Employee Directors* | | | | |
| Joseph S. Bailes, M.D. | 2,300 | 37,589 | 7,207 | 12,058 |
| Mark Chin | 2,300 | 37,589 | 10,462 | 16,038 |
| Jonathan Drachman, M.D. | 2,300 | 37,589 | 10,309 | 32,244 |
| Ronald Hunt | 2,300 | 37,589 | 10,758 | 16,038 |
| Scott Myers | 4,600 | 75,178 | 6,097 | 5,896 |
| Andrew Robbins | 2,300 | 37,589 | 4,065 | 2,946 |
| Lauren P. Silvernail | 3,655 | 46,803 | 678 | 4,610 |

| Name | Harpoon RSUs (#) | Value of Harpoon RSUs ($) |
|---|---|---|
| Julie Eastland | 259,750 | 5,974,250 |
| Luke Walker, M.D. | 135,000 | 3,105,000 |
| James B. Bucher, J.D. | — | — |
| *Non-Employee Directors* | | |
| Joseph S. Bailes, M.D. | 5,000 | 115,000 |
| Mark Chin | 5,000 | 115,000 |
| Jonathan Drachman, M.D. | 5,000 | 115,000 |
| Ronald Hunt | 5,000 | 115,000 |
| Scott Myers | 5,000 | 115,000 |
| Andrew Robbins | 5,000 | 115,000 |
| Lauren P. Silvernail | 5,000 | 115,000 |

37. In addition, employment agreements with certain Harpoon executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash Severance ($) | Value of COBRA Benefits ($) |
|---|---|---|
| Julie Eastland | 1,441,500 | 40,765 |
| Luke Walker, M.D. | 700,000 | 27,587 |
| James B. Bucher, J.D. | 630,000 | 32,901 |

38. The Preliminary Proxy Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

39. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. Thus, while the Proposed Transaction is not in the best interests of Harpoon, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

41. On January 29, 2024, the Harpoon Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. The Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. What powers the Committee had to evaluate the Proposed Transaction, including whether the Committee was empowered to veto a potential transaction not in the best interest of stockholders;

   b. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders; and

   c. The consideration paid to, or owed to, Centerview for services rendered in relation to the sales process and Proposed Transaction; and how much, if any, is owed to Centerview upon consummation of the Proposed Transaction.

43. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Harpoon's Financial Projections*

44. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Harpoon provided by Harpoon management to the Board and Centerview and relied upon by Centerview in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Harpoon, including certain financial forecasts, analyses and projections relating to Harpoon prepared by Harpoon management and furnished to Centerview by Harpoon for purposes of Centerview's analysis."

46. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Harpoon management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47. With regard to the *Certain Unaudited Prospective Financial Information* provided by Harpoon Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

    b. Total R&D expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

    c. Total S&M expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

      d. Total G&A expenses, including all underlying inputs, metrics, and assumptions used to calculate same; and

      e. EBIT, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: earnings before interest expenses and taxes.

48. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

51. In the Preliminary Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

52. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The Company's present value as of December 31, 2023, utilized;

      b. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 14.0% to 16.0%;

    c.   The Company's implied terminal value utilized;

    d.   The specific inputs, metrics, and assumptions used to determine the utilized perpetuity decline rate of 40% year over year, utilized;

    e.   The specific inputs, metrics, and assumptions used to determine Harpoon's weighted average cost of capital utilized;

    f.   The tax savings from usage of Harpoon's federal net operating losses as of December 31, 2022, and Harpoon's estimated future losses, utilized; and

    g.   The number of fully-diluted outstanding shares of Harpoon common stock as of January 5, 2024.

53.   With respect to the *Analyst Price Targets Analysis,* the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific price targets analyzed; and

    b.   The specific Wall Street firms that generated the analyzed price targets.

54.   With respect to *Precedent Premium Paid Analysis,* the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific transaction analyzed;

    b.   The per share acquisition price in each transaction analyzed;

    c.   The closing price of the target company's common stock analyzed; and

    d.   The specific inputs, assumptions, and metrics used to determine the applied range of 50% to 110%.

55.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Harpoon

stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

64. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Harpoon's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of Harpoon within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Harpoon to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Harpoon and all of its employees. As alleged above, Harpoon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

1  C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 7, 2024           **BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*